Will hear argument next in Moses v. Westchester County Department of Corrections, 173323. May it please the Honorable Court, manual- Hold on one second, Mr. Moses. Thank you. All right, please proceed. Thank you. May it please the Honorable Court, manual Moses, attorney for the decedent Zoran Teodorovic, representing the estate, the appellant in this case, your Honor, plaintiff. Good morning. Who was Zoran Teodorovic? Zoran Teodorovic was a detainee found barbecuing in someone's grill in their basement and couldn't make $150 bail. This is a tragedy of a person who is mentally ill. He came in flat, unemotional, assigned to the 1G block, which had an observation bubble at the end. 28 cells. There was one person who observed everything that took place. His name was Soles. Mr. Soles, an inmate, threw a long crack, and he was on the odd side. Teodorovic was on the even side. He was way in the back, could see everything. What happened? What was his testimony? My client didn't want to lock back into his cell. It was stinking of urine, and the trustee was cleaning it out. And he put up his hands, and he was bewildered. No less than four times did Officer Reimer tell my client to lock the F back in, in the bubble, in the observation bubble, comes out and brings him to the ground. Soles testified he was hitting him, as I recall. And Paul Cote comes out through the Sally Port doors, heavy boots, smashes his head into the ground repeatedly in a horrific attack. Officer Reimer- We understand all of that, I think, because we've read the briefs. But the question, I believe, before us is whether the claim was time barred, and whether, even if time barred, it should have been equitably told. Let me give you some information to address that. First, let me read from a letter from February 2002 that a non-relative wrote to my, to Mirka Furst's sister of Zoran, February 2002. Mindful that she had gotten very poor notification, a four o'clock call in the morning from a priest to a non-relative of a person, and I'll get to the letter, with diminished capacity. A person who has diminished capacity is a person who really can't designate who they should be contacted. Yet Judge Ramos, in an abuse of discretion, felt that that was okay. We all, just briefly, we're governed by the disciplinary rules. If I have a client who has a diminished capacity, I have to ensure his constitutional rights. I have to make sure that that person has his confidentialities protected. There was no meaningful investigation when it came to contacting the family. This was a non-bred relative who couldn't get any information from the hospital because she was- Worked backwards. The statute of limitations was three years, correct? Yes, the local tolling provision is three years, except for extraordinary circumstances. The court has, this is an extraordinary circumstance case. And in this particular situation, the filing date was 2010, December of 2010. That is correct, Your Honor. I'll go through the sequence. If it was going backwards, why wasn't, at least by the year 2006, your client on notice? Well, why- Because at that point, Kelly had been appointed executor. What happened, right. When Kelly was appointed executor, it should be noted that Kelly didn't want to continue as the executor and he had to be removed. Once the- Kelly was the executor, though, at that time, and was in a position of knowledge and representing, and at that point, it would seem to me that putatively, your client was on knowledge.  Okay, at that point, though, Mr. Kelly did not want to be involved. Stephen Peshkin and Kelly were associated with each other. I went to the clerk- Whether or not he wanted to be involved, that's not our issue. Our issue is when, being as charitable as possible, when tolling would have ended. And I'll give you that. So here we have the issue related to their due diligence. The mothers in Sweden, the sisters in Serbia, and they're looking for an attorney. They find- That was all prior to 2006. No, this is after 2006. What happened after 2006 was, is that Stephen Peshkin filed for a late notice of claim. He was denied. He no longer wanted to continue with the case. And the family was in Sweden. The family was in Serbia. And what was happening then is, is they were doing their best to try to find an attorney. And they found me through the lawyer's diary, and they found me through an attorney in the United States who spoke Swedish, who was an immigration lawyer. And that's when he was able to translate a retainer agreement. It took time to get Kelly removed. I went to the court, to the clerk, and he said, well, you should do, you should become, in essence, Zoran T. Dorvik, because the family is in another continent. I would be able to represent them. I'm not a significant fact witness. Look, I'm very sympathetic, frankly, but is that an extraordinary circumstance? It's an extraordinary circumstance because it's not maximum feasible diligence under Holland. Under the case that was cited by Judge Ellis, it's did they do their best to try to get an attorney? And clearly they did. There was an incredibly long delay here. Not only that, Your Honors, if you decide anything in this case, okay? Statute of, please listen to me for a moment. Statute of limitations aside, there's so many people that are mentally ill in these jails. And if you decide anything, decide that there should be an anticipated use of force for the mentally ill. That's what they need, so they're not abused, so that when these officers respond, they could have brought out the people that would have made all the difference in this case. And I understand the statute is critical, but this family did what they could within their means, with the language difficulties, and that's what Judge Ellis found, that's what Judge Daniels found. At that time, nothing had significantly changed from those decisions after the fact, when Judge Ramos, and that's why I believe it was an abuse of discretion, to not allow this case to go forward. There's also grave injustice. You're not going to find a 1983 case that has been analyzed to this extent. I sent this report to the Justice Department. They thanked me for it. I had a three-star, someone who knew Pat Walsh, who was a three-star Rikers that reduced slashings and stabbings in half. I could tell you, I work with this man. This man was on the ball, okay? And he would tell me exactly what to ask these people. This is the case you need to make an incredibly good decision on behalf of the mentally ill. Thank you, you've reserved two minutes of rebuttal. Thank you, Your Honor. May I proceed, Your Honor? Yes. If it pleases the court, my name is Kimberly Sanford. I'm an attorney with the law firm of Harriton and Four. We're of counsel to the Westchester County Law Department and represent Westchester County and Westchester County Department of Correction in this matter. Plaintiff has gone to some lengths in his briefs and argument this morning to point out to the court how much of a tragic incident this was. We do not contest that this occurrence was tragic. I mean, there was a criminal conviction as a result. There were two criminal convictions, one at the state level and one at the federal level. Mr. Cote was sentenced to jail time as a result of both convictions. And we do not contest that this was a tragic incident. The question as the court has pointed out, however, is whether or not there is a viable legal claim against the county and its department of correction. And because of two legal reasons, there are not. These are reasons that plaintiff has failed to address in his brief and has failed to address an argument this morning. The first one being statute of limitations. As the court pointed out and as plaintiff concedes, the claim was not filed within the three year time period that was required under New York law. Plaintiff initially made the claim in his complaint and on a motion to dismiss that the statute of limitations should be equitably told. And there was an earlier decision that based on the allegations in the complaint, the court was not going to dismiss the complaint initially, but would allow us to proceed to discovery. And during discovery, what was found out was that the family was aware, eventually, of what happened to Mr. Teodorovic. That his stepmother, who had been married to his father for close to 40 years and sponsored Mr. Teodorovic's immigration to the United States, was advised the night that this occurred as to what happened. She, by the way, was the only person that he identified as his emergency contact when he was admitted to the jail. And that they were able to navigate the legal system, retain legal counsel, have administrators appointed to the estate, and were in a position to proceed with legal recourse. They did that, and filed a motion to file a late notice of claim. As of- That was when, in November of 2006? Correct. I believe it was November 22nd, 2006, where they were in a position to proceed. We don't concede that there was a basis to apply any equitable tolling before that. But even after that date, there's absolutely no reason for any equitable tolling after that. And the complaint still wasn't filed until four years later. The only reason that the complaint was not filed was not because of the family's location, not because of their inability to speak English or to navigate the legal system, but because the attorneys that they had hired who were competent had decided that there was not a basis to proceed with the claim against the county. They didn't think there was merit. And because they did not believe it would be profitable at the end of the day to proceed with the claim against Mr. Cote. These are not extraordinary circumstances. The test is two parts. There needs to be rare and exceptional circumstances to apply equitable tolling. And then there also needs to be a showing that the family acted with due diligence during the entire period of time that they were seeking to preserve the claim. There's no evidence after November of 2006 that they did anything. Excuse me. They tried to get a lawyer. There's no evidence. You just blamed the lawyers. Well. So what is the lapse on the family's part? The family could have retained legal counsel. There was an attorney that was the estate administrator. He could have filed the claim. If they believed that the attorney had engaged in attorney misconduct, which there's no allegations in this case, they could have filed a malpractice claim against that attorney. They could have taken a lot of steps. They had obviously had the wherewithal to retain an original counsel. And while plaintiff's counsel suggests that during this four year period of time they were looking to get another attorney, there's no actual evidence in the record that they took any steps during that four year period of time. The fact that the attorney was not doing what now the appellant says he should have done is not an extraordinary circumstance, is it? It's not, your honor. And neither is the fact that they couldn't find new legal counsel. There's case law in this circuit which indicates that the inability to find a lawyer and even attorney misconduct, which there are no allegations in this case, would not rise to the level of exceptional circumstances. So there's simply no evidence. It's an abuse of discretion standard. On the motion for summary judgment, we're looking now at what facts were shown during discovery as opposed to what's alleged in the motion to dismiss. And on a motion for summary judgment, decisions certainly can differ from what was decided onto a motion to dismiss based on the actual facts. And the district court had the discretion to do that, and its wise discretion opted not to apply the equitable tolling doctrine. There simply were no circumstances to do that. Moving on to the substance of the claim, even if the court were to consider the merits, which we don't think that it should because we believe that the claim was clearly time barred. The section 1983 claim was dismissed on summary judgment for two very good reasons. One, there was simply no evidence that there was an unconstitutional policy or custom at the level of the jail. And two, there was simply no evidence that any alleged deficiencies with the policy led to this incident. Mr. Cote testified at length during his criminal trial that he initially tried to cover up what he had done because he knew that the county would have never tolerated his conduct and he was afraid of employment repercussions. That certainly does not support any argument that the county did anything to lead Mr. Cote to believe that his conduct would have been condoned, covered up, or accepted in any way. He testified at length how he knew what the policy was, there was a sound policy in place, how he didn't need any additional training because he had received extensive training, and that he knew what he did essentially was, what he was accused of doing was not right. And that he was going to suffer employment repercussions, which he did. Under that testimony and those facts, there just cannot be any causal link between any alleged policy and what Mr. Cote was alleged to do. Plaintiff's counsel has also raised- Is Cote still in this case or not? He is, your honor. He did not file a brief, so he's not here today. So he's technically pro se? He is pro se. He has represented himself throughout the course of this civil litigation. Plaintiff's counsel today has also referenced time and time again- Is this a final judgment as to him? Yes, the case was dismissed as to him, also based on statute of limitations. I see. Plaintiff's counsel has raised several times during argument, the mental capacity of Mr. Teodorovic, and for the first time on this appeal, has made a claim that the county somehow violated the Americans with Disability Act. Briefly, that was never raised in his complaint, never raised in front of the district court. There was never an opportunity for discovery on that issue, and based on the facts, there is simply no merit to any such claim. There would be severe prejudice if the court were to allow a claim under the ADA to proceed at this time. Thank you very much. Thank you, your honor. We'll rest on our brief. Your honors, while it's not legally significant, I want to relate to you a story related to the statute of limitations that will dovetail so you'd have better insight looking at the structure long and hard to understand what happened in this case. On the day that I got my letters of administration to file this case, okay, was my birthday. The very next day I had an extensive pleading that was filed that also referenced the fact of how little my client's sister knew about what actually happened in this case when she contacted DOJ. The fact that there was alleged to be malpractice as a remedy is not consequential. What's consequential is bringing to power and full vetting of what occurred, not just a remedy because an attorney. There appears to have been a vetting in the context of a criminal case, and your adversary described a testimony from the main perpetrator that indicated that there was no policy, they was violating the policy in fact. So on the merits, and I think you're making a merits point, where is the showing of a policy? I was, a constitutional deprivation policy by the county? Well, it's the Monell claim presumably that you're getting at. Yeah, well, the deficiency in the constitution as it relates to what happened to my client, is that what you're saying? Are we dealing with statute of limitations now? Well, I think you were getting to the Monell claim. Well, I would like to get to the Monell claim. You want to jump that hurdle of the statute of limitations, right? Right, and I'm just saying I was ready to go as soon as I got my letters of administration, I followed the pleading. This is, in terms of the actual Monell, my goodness. The shift commander that night had no training. There was constitutionally deficient training. There was no anticipated use of force policy. Anticipated use of force policy would have prevented this entire thing. There were medical personnel 75 feet away. That would have brought out the white shirts. They had an emergency use of force, not an anticipated use of force. And that would have made all the difference under the ADA. Not only that, there was five years of no disciplinary record. How can you say that if a person violates the norms of civilized behavior as an officer and does what was done here, that that somehow was sanctioned by or was a policy of the county? You have a three part test under Walker. Under the three part test, your honor, for the second circuit please. And if you know to a moral certainty, remember he called out four times to lock the F back in. That happens all the time in jail, where people refuse to lock back in. This three part test in the Walker case, you know to a moral certainty the employees will cover a given situation. And the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult. There was no training for the 1G block. That's the testimony. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. When Paul Cote said during the criminal trial, the department never would have tolerated this. That's exactly the point. Had the white shirts been there, the supervisors, the medical personnel that were nearby on the anticipated use of force, all's he had to do when he was in the bubble is say, up, we're having a problem, sergeant. We need somebody out here. We got somebody. He shouldn't have left the bubble. He shouldn't have opened those sally port doors. That's an unconstitutional policy, an emergency use of force. I think we understand your argument, and I thank you. Thank you, your honor. There's no decision, and that concludes today's oral argument calendar, and court is adjourned. Thank you very much. Court is adjourned.